IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARC E. OLIVER, d/b/a GULF COAST ENVIRONMENTAL AND RECOVERY, And T.M. JEMISON CONSTRUCTION CO. INC. d/b/a JEMISON MARINE, INC., | : | |
| Plaintiffs, | : | CA 11-0223-KD-C |
| MIDSOUTH BANK, N.A., | | IN ADMIRALTY |
| Plaintiff/Counter-Defendant | : | *In Personam and In Rem* |
| vs. | : | |
| M/V BARBARY COAST, her engines, tackle, furniture, and appurtenances, etc., *In Rem*, and RODD CAIRNS, an individual, and ATCHAFALYA MARINE, LLC, *In personam*, | : | |
| Defendants/Counter-Plaintiffs/ Third-Party Plaintiffs, | : | |
| vs. | : | |
| EAGLE RIVER TOWING, L.L.C., p/k/a/or a/k/a EAGLE INLAND TOWING, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, LOUISIANA LIMESTONE & LOGISTICS, L.L.C., and CURTIS BUFORD, | : | |
| Third-Party Defendants. | : | |

## ORDER

Intervenor Plaintiff Midsouth Bank, N.A. filed a "Motion to Require Substitute Custodian, Southern Marine, To Furnish Information, Etc." (Doc. 54) on July 19, 2011. Southern Marine filed its response (Doc. 73) on August 4, 2011. After reviewing the same, the undersigned noted that the only real disagreement between the parties

appeared to be whether the implementation of an evacuation plan required under an insurance policy issued by Great American Insurance Company to protect the subject vessel can be an expense *in custodia legis*, and issued an order setting this matter for a hearing. (*See* Docs. 77 & 79.) On August 19, 2011, Midsouth filed a notice of filing of declaration pages of hull and P&I policies covering the vessel (Doc. 91). A hearing—at which counsel for Midsouth, Southern Marine, Rodd Cairns, and Atchafalya Marine were present—was held on August 24, 2011, and this matter is now before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rules 72.2(a) & (c)(1), for determination. For the reasons set forth below, the motion is **GRANTED**.

Background

In its motion, Midsouth asks that Southern Marine provide certain information and perform certain acts. (Doc. 54 at 1-3.) Southern Marine's response appears to provide the requested information (*see* Docs. 73 at 1-3; 73-1; 73-2); as such, the undersigned will address the two acts—both related to the insurance policy issued by Great American (Doc. 73-3; *see also* Doc. 91)—Midsouth asks be performed.

According to Midsouth, the insurance policy it obtained from Great American is subject to Southern Marine providing and performing two acts:

(a) [furnishing] a satisfactory evacuation plan for removing the vessel from its present mooring, where it is subject to storm surges, in the event of a hurricane or tropical storm; and

(b) installation of a high water bilge alarm aboard the vessel utilizing shore power with a back-up power supply (a battery) (a very minor mechanical instillation).

(Doc. 54 at 2; *see also* Doc. 73 at 2.) While Southern Marine does not object to these requests, it is concerned that the costs associated with completing them may not qualify as expenses *in custodia legis*.[1] (*See* Doc. 73 at 3-5.)

"In order to qualify for preferential treatment as an expense *in custodia legis*, an expense must be incurred 'upon the authority of the court or its officer,' **and** be 'for the common benefit of those interested in [the] fund.'" *Oil Shipping (Bunkering) B.V. v. Sonmez Denizcilik Ve Ticaret A.S.*, 10 F.3d 176, 182 (3d Cir. 1993) (quoting *Kingstate Oil v. M/V GREEN STAR*, 815 F.2d 918, 922-24 (3d Cir. 1987) (quoting, in turn, *New York Dock Co. v. S.S. POZNAN*, 274 U.S. 117, 121 (1927)) (emphasis added); *see Fortis Bank (Nederland) N.V. v. M/V SHAMROCK*, 379 F. Supp. 2d 2, 7-8 (D. Me. 2005) (same); *see also Dresdner Bank AG v. M/V OLYMPIA VOYAGER*, 465 F.3d 1267, 1272 (11th Cir. 2006) ("Steamship is not entitled, under the doctrine of *custodia legis*, to equitable prioritization of its claim for the value of insurance it provided to the vessel after its arrest because it did not first seek or receive the district court's permission to provide such insurance[.]").

---

[1] "Competing maritime lien claims are first ranked according to Class," and expenses of justice during *custodia legis*, while technically not a "lien claim," are "nevertheless [ ] paid before any others." *Rayon Y Celanese Peruana, S.A. v. M/V PHGH*, 471 F. Supp. 1363, 1369-70 (S.D. Ala. 1979) (Hand, J.) (citations omitted); *see also Bender Welding & Mach. Co., Inc. v. M/V Sovereign Opal*, 415 F. Supp. 772, 773 (S.D. Ala. 1976) (Thomas, J.) ("It is well settled that claims arising from the care and custody of the vessel while in the custody of the court through the United States Marshal have priority to lien claims.") (citations omitted); *cf. Payne v. S.S. TROPIC BREEZE*, 423 F.2d 236, 239 (1st Cir. 1970) ("Expenditures while a ship is *in custodia legis* do not give rise to maritime liens. . . . [But] a district court, sitting in admiralty, has the equitable power to give priority to [such] claims.").

<u>Installation of a high water bilge alarm</u>.

Not only does Southern Marine not object to installation of a high water bilge alarm, it "believes that a high water alarm would be of diminimus cost and inure to the benefit of all the lien holders," and "requests that this Court authorize a claim for the cost of the installation . . . as a cost *in custodial legis*" [sic]. (Doc. 73 at 3.) The Court, therefore, **ORDERS**, first, the installation of this alarm, and second, that the costs associated with the installation be allowed to be claimed by Southern Marine as an expense *in custodia legis*.

<u>The evacuation plan</u>.

In its response, Southern Marine disputed Midsouth's assertion that the Great American policy "name[s] the U.S. Marshal as an additional insured and the Clerk of this Court as an additional loss payee" (Doc. 54 at 2; *see* Doc. 73 at 3), attached what it claims to be the applicable policy (Doc. 73-3), and also challenged Midsouth's "statements that [its] requests are both taxable as costs and possible, **but for** [Southern Marine's] actions" (Doc. 73 at 3 (emphasis added); *see* Doc. 54 at 2). Southern Marine further insisted that it cannot move the vessel without prior approval of the Court and the U.S. Coast Guard because the vessel has been under port arrest since January 12, 2010. (Doc. 73 at 3-4; *see also* Doc. 73-2 (Jan. 12, 2010 Order [#009-10] of the Coast Guard Captain of the Port ("COTP") of Mobile, noting violations of applicable regulations, requiring abatement of same, and providing that "[a]ny further movement of [the] vessel without prior approval of the [COTP] is prohibited").) Finally, Southern Marine stated

4

that while it has informed Midsouth's surveyor "that the marina was a safe port in the event of a hurricane," it has obtained two separate evacuation plans for the M/V BARBARY COAST, and requests that the Court order Midsouth to pay the cost of any evacuation because Southern Marine is "concerned that the cost of [any] evacuation will ultimately not be taxed as an *in custodia legis* item and [it] should not be required by Great American and Midsouth to pay [the costs associated with] initiating a plan with only a possibility of being repaid." (Doc. 73 at 4.)

The notice filed by Midsouth on August 19, 2011 (Doc. 91) brought to the Court's attention (1) an endorsement to the policy dated August 15, 2011, which names the United States Marshal as an additional insured and the Clerk of this Court as an additional loss payee for so long as the vessel is in the jurisdiction of the Court (*see id.* at 1 & 7) and (2) the addition of pollution coverage to the policy (*see id* at 1; *compare id.* at 7, *with* Doc. 73-3 at 38). Further, at the August 24, 2011 Hearing, counsel for Southern Marine acknowledged that these changes to the policy mollify its concern that the policy is not "for the common benefit" of all lien holders, and thus expenses associated with maintaining the policy—chiefly, implementation of an evacuation plan—would not qualify as *in custodia legis* expenses. *See, e.g., Oil Shipping*, 10 F.3d at 182; *Bassis v. Universal Line, S.A.*, 484 F.2d 1065, 1068 (2d Cir. 1973) (cited by *Dresdner Bank*, 465 F.3d at 1273) (in which the Second Circuit recognized that "those furnishing custodial services to a ship *in custodia legis* are gambling on a wholly unpredictable result unless they take the precaution of having their services authorized in advance by an order of the

5

custodial court"; one requirement for an expense to be authorized as an *in custodia legis* item; the other, of course, being that the expense be "for the common benefit").

The Court, therefore, **ORDERS** that, should the M/V BARBARY COAST need to be evacuated in the event Mobile is threatened by a hurricane or tropical storm, Southern Marine shall undertake such an evacuation—as authorized by the COTP—and the reasonable costs associated with that evacuation shall be authorized as *in custodia legis* expenses.[2] The Court further **ORDERS** that any **reasonable** expenses associated with repairs required by the COTP before the vessel is allowed to be evacuated shall also be authorized as *in custodia legis* expenses.

## Conclusion

For the reasons stated above, Midsouth's motion (Doc. 54) is **GRANTED**.

**DONE** this the 25th day of August, 2011.

> s/WILLIAM E. CASSADY
> **UNITED STATES MAGISTRATE JUDGE**

---

[2] The Court notes that, in this regard, up to $10,000 appears—at least initially—to be a reasonable amount based on the two proposals Southern Marine obtained (*see* Doc. 73-4) and the statements of counsel at the August 24, 2011 Hearing.